**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V. <br><br> Plaintiffs, <br><br> v. <br><br> EGLO LEUCHTEN GMBH and EGLO HONG KONG LIGHTING LTD <br><br> Defendants. | Civil Action No. 6:22-cv-812 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") for their Complaint against Defendants EGLO Leuchten GmbH, and EGLO Hong Kong Lighting Ltd. (collectively "EGLO" or "Defendants") allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285.

**THE PARTIES**

2. Plaintiff Signify North America Corporation (formerly known as Philips Lighting North America Corporation) is a corporation organized and existing under the laws of Delaware with its principal place of business at 200 Franklin Square Drive, Somerset, New Jersey 08873.

3.      Plaintiff Signify Holding B.V. (formerly known as Philips Lighting Holding B.V.) is a corporation organized and existing under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

4.      Upon information and belief, EGLO is a corporation organized and existing under the laws of Austria with its principal place of business at Heiligkreuz 22, A-6136 PILL, Austria, and does business throughout the Unites States and in the state of Texas.

5.      Upon information and belief, EGLO Hong Kong Lighting Ltd is a corporation organized and existing under the laws of China with its principal place of business at Room 1803, 18/F, Multifield Centre, 426 Shanghai Street, Mongkok, Kowloon, Hong Kong, China, and does business throughout the Unites States and in the state of Texas.

**JURISDICTION AND VENUE**

6.      This Court has subject-matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338 and because this action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, EGLO is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

8.      Upon information and belief, EGLO is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein or those committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail EGLO of the privilege of conducting those activities in

2

this state and this judicial district and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.  For example, EGLO sells and ships infringing products to Texas residents through multiple online retailers including Amazon.com, Wayfair.com, Lightshop.com, and Lumens.com and distributes their products to Texas residents through national retailers Home Depot Inc., Lowes Inc, Target Corporation, and Walmart, Inc, and has multiple registered dealers in the state of Texas, including Legend Lighting Inc. located in this district. EGLO USA, Inc. is also registered to do business and pay taxes in the state of Texas, with a registered agent located at 815 Brazos Street, Suite 500 Austin, Texas 78701.

9.    Such a presence and activities further the development, design, manufacture, importation, distribution, sale, and use of EGLO infringing products in Texas.  Through direction and control of its products, EGLO has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over EGLO would not offend traditional notions of fair play and substantial justice.

10.    Upon information and belief, EGLO, directly and via intermediaries, such as affiliates, distributors, and customers, has placed and continues to place infringing EGLO products into the U.S. stream of commerce.  EGLO has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas.

3

11. On information and belief, EGLO utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers, including offering such products for sale via lighting dealers in the state of Texas, including Legend Lighting, located in this district. EGLO uses multiple dealers, and national retailers to import, distribute, and service infringing products, such as the products identified in the table below, (collectively the "accused products").

| Accused Products (by Material Number) |
| --- |
| 203646A, 204483A, 201453A, 204376A, 203972A, 202257A, 204234A, 204237A, 97966A, 204076A, 201442A |

Such EGLO products have been sold in retail stores, both brick and mortar and online, within this judicial district and in Texas. *See.*, *e.g.,* https://www.eglo.com/us/dealer-locator (showing multiple lighting dealers located throughout the state of Texas, including Legend Lighting Inc. at 15342 Interstate 35, Austin, TX 78728); https://legend.xolights.com/brand-eglo (showing EGLO products offered for sale at Legend Lighting).

12. On information and belief, EGLO purposefully places infringing EGLO products in established distribution channels in the stream of commerce by contracting with national retailers who sell EGLO' products in the U.S., including in Texas and this judicial district. EGLO, directly or through its subsidiaries and affiliates, contracts with these companies with the knowledge and expectation that EGLO products will be imported, distributed, advertised, offered for sale, and sold in the U.S. market.

13. For example, EGLO sells or offers for sale its products through at least Amazon.com, Lumens.com, Wayfair.com, Home Depot Inc., Lowes Inc., Target Corporation, and Walmart, Inc., in and specifically for the U.S. market, via those companies' own websites or retail

4

stores located in and selling their products to consumers in Texas and this judicial district. *See,*

*e.g.,* https://www.amazon.com/stores/EGLO/page/981F68AA-A441-4AE7-9A13-E8E4366781E6?ref_=ast_bln;

https://www.lumens.com/eglo/?utm_source=google&utm_medium=cpc&utm_campaign=SEM%20NB%20-%20Taxonomy%20-%20Brands&utm_term=eglo%20lighting&gclid=EAIaIQobChMIpPOulI_n-AIVyhvUAR1XTQuhEAAYASAAEgJFvvD_BwE; https://www.wayfair.com/brand/bnd/eglo-b17774.html; https://www.homedepot.com/b/Lighting/Eglo/N-5yc1vZbvn5Z5g4?mtc=SEM-BF-CDP-GGL-D27-027_016_INT_LIGHTING-NA-NA-NA-DSA-NA-NA-NA-NA-NBR-NA-NA-NA-D27_New&cm_mmc=SEM-BF-CDP-GGL-D27-027_016_INT_LIGHTING-NA-NA-NA-DSA-NA-NA-NA-NA-NBR-NA-NA-NA-D27_New-71700000091161769-58700007697099940-39700069739408238&gclid=EAIaIQobChMI0oimyYzn-AIVqW1vBB3_9A5fEAAYASAAEgL9z_D_BwE&gclsrc=aw.ds;

https://www.lowes.com/pl/Eglo--Lighting-ceiling-fans/4294935637?refinement=4294703698;

https://www.target.com/c/lamps-lighting-home-decor/eglo/-/N-5xttmZy7w7u;

https://www.walmart.com/browse/home/ceiling-lights-fixtures/eglo/4044_133012_133113_3669167/YnJhbmQ6RUdMTwieie?&adid=22222222254430621662&wmlspartner=wmtlabs&wl0=&wl1=g&wl2=c&wl3=420276791263&wl4=dsa-874491177798&wl5=9010770&wl6=&wl7=&wl8=&veh=sem&gclid=EAIaIQobChMIx4uYuI3n-AIV8G5vBB1MGgzVEAAYASAAEgJ1VfD_BwE&gclsrc=aw.ds; EGLO, directly and through its subsidiaries and affiliates, also provides application software for download and use in the United States and in this District in conjunction with and as part of its wireless lighting devices: at least "Awox Smart CONTROL" is used in conjunction with EGLO smart products, such as

EGLO lights, and allows the user to control EGLO products. "Awox Smart CONTROL" is available via digital distribution platforms by Apple Inc. and Google. *See, e.g., Awox SmartCONTROL,* App Store Preview, https://apps.apple.com/us/app/awox-smartcontrol/id810201950 (last visited June 27, 2022) (offering the application for download, and indicating the developer website is https://www.eglo.com/en/, an EGLO home page); *see also Awox Smart CONTROL,* Google Play, https://play.google.com/store/apps/details?id=com.awox.smart.control&hl=en_US&gl=US (last visited June 27, 2022) (offering the application for download, and indicating the developer email is smart.support@eglo.com, an EGLO email).

14.     The website https://www.eglo.com/us/ is copyrighted by EGLO Leuchten GmbH and specifically targets customers in the United States and in Texas.  This website also includes a dealer locator identifying for US and Texan customers where EGLO's products can be purchased in the United States and in Texas.  *See* https://www.eglo.com/us/dealer-locator.



15.     The website copyrighted and maintained by EGLO Leuchten GmbH further provides a US telephone number and US-specific email address for prospective customers to contact EGLO regarding its products.



16.     The website copyrighted and maintained by EGLO Leuchten GmbH further comprises a web page titled "EGLO World-Wide" that states "If you want to conquer the world, you need to be everywhere" and further states "[o]ur factories in Hungary, China and India produce products to inspire our customers.  In order to make this possible, our trend scouts around the world are looking for new ideas. These are turned into products available around the globe. Our sales companies in about 50 countries worldwide are the key to this." https://www.eglo.com/us/eglo-worldwide (emphasis added).  This web page further provides contact information for EGLO's sales teams in various countries, including the United States. *Id.* A separate web page titled "About EGLO" further states, "We now operate over 70 companies in more than 50 countries."  *See* https://www.eglo.com/en/about-eglo.

17.     EGLO's company profile, available for download at https://eglo.cld.bz/Company-Profile-en/VI/ and written and copyrighted by EGLO Leuchten GmbH, further indicates that EGLO operates as one company worldwide, with "sales divisions" and "storages" in the United States.



18.     EGLO states in this same company profile, "From Product management to marketing, controlling and to logistics, the headquarters control all essential processes from Austria. We employ 4,700 people around the world." (emphasis added).  EGLO also states in this company profile, "About 70 EGLO business units take care of sales, service and some regional marketing locally in more than 50 countries around the world."

19.     EGLO imports lighting products for sale into the United States, including from EGLO Hong Kong Lighting Ltd to EGLO USA Inc. and to various retailers and customers, as indicated in U.S. Customs import records.  These acts of importation and sale are performed under the direction and control of EGLO Leuchten GmbH.

8

20.     Based on EGLO's connections, relationships, supply contracts, and other agreements, U.S.-based national retailers, and distributors, EGLO knows that Texas, including this District, is a termination point of the established distribution channel, including online and brick and mortar stores offering EGLO products and software to consumers in Texas and this district. EGLO, therefore, has purposefully directed its activities at Texas and this District, and should reasonably anticipate being brought in this Court, at least on this basis.

21.     This Court has personal jurisdiction over EGLO, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, because EGLO has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over EGLO would not offend traditional notions of fair play and substantial justice.

22.     In the alternative, if EGLO maintains that it is not subject to personal jurisdiction of the courts of general jurisdiction of any state, the Court has personal jurisdiction over EGLO under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law and exercising jurisdiction over EGLO is consistent with the U.S. Constitution.

### THE PATENTS-IN-SUIT

23.     Signify is a global market leader with recognized expertise in the development, manufacturing, and application of innovative LED lighting solutions.

24.     To protect its intellectual property resulting from its significant investments, Signify has obtained numerous patents directed to various LED inventions and technologies.  For example, Signify's LED-related patents include U.S. Patent Nos. 7,182,480, 7,256,554, 7,737,643,

9

8,070,328, 8,348,479, 7,543,956, 7,852,017, 8,963,449, and 8,174,204 (collectively, the "Patents-in-Suit").

25.     U.S. Patent No. 7,182,480 (the "'480 Patent"), titled "System and Method for Manipulating Illumination Created by an Array of Light Emitting Devices" was duly and legally issued by the United States Patent and Trademark Office on February 27, 2007.  The '480 Patent relates to LED light sources and optical systems, and including an optical system incorporating solid-state light emitting devices configured in an array.  The '480 Patent is directed to a new and improved method and apparatus for the manipulation of illumination created by an array of light emitting devices not previously known in the art.  Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '480 Patent, a copy of which is attached as Exhibit 1.

26.     U.S. Patent No. 7,256,554 (the "'554 Patent"), titled "LED Power Control Methods and Apparatus" was duly and legally issued by the United States Patent and Trademark Office on August 14, 2007.  The '554 patent generally relates to controlling power delivered to a load and is directed to new and improved methods and apparatus for providing and controlling power to at least some types of loads, not previously known in the art.  Plaintiff Signify North America Corporation is the assignee and owner of all right, title, and interest in the '554 Patent, a copy of which is attached as Exhibit 2.

27.     U.S. Patent No. 7,737,643 (the "'643 Patent"), titled "LED Power Control Methods and Apparatus," was duly and legally issued by the United States Patent and Trademark Office on June 15, 2010.  The '643 Patent generally relates to controlling power delivered to a load and is directed to new and improved methods and apparatus for providing and controlling power to at least some types of loads, not previously known in the art. Plaintiff Signify North America

10

Corporation is the assignee and owner of all right, title, and interest in the '643 Patent, a copy of which is attached as Exhibit 3.

28.    U.S. Patent No. 8,070,328 (the "'328 Patent"), titled "LED Downlight," was duly and legally issued by the United States Patent and Trademark Office on December 6, 2011.  The '328 patent is directed to new and improved LED downlight fixture not previously known in the art.  Plaintiff Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '328 Patent, a copy of which is attached as Exhibit 4.

29.    U.S. Patent No. 8,348,479 (the "'479 Patent"), titled "Light Emitting Diode Recessed Light Fixture," was duly and legally issued by the United States Patent and Trademark Office on January 8, 2013.  The '479 Patent is directed to new and improved recessed light fixture, using LEDs, not previously known in the art.  Plaintiff Signify Holding B.V., is the assignee and owner of all right, title, and interest in the '479 Patent, a copy of which is attached as Exhibit 5.

30.    U.S. Patent No. 7,543,956 (the "'956 Patent"), titled "Configurations and Methods for Embedding Electronics or Light Emitters in Manufactured Materials," was duly and legally issued by the United States Patent and Trademark Office on June 9, 2009.  The '017 Patent is directed to new and improved methods and means for embedding electronic components, such as LEDs, into manufactured or natural surface materials, not previously known in the art.  Plaintiff Signify North America Corporation is the assignee and owner of all right, title, and interest in the '956 Patent, a copy of which is attached as Exhibit 6.

31.    U.S. Patent No. 7,852,017 (the "'017 Patent"), titled "Ballast for Light Emitting Diode Light Sources," was duly and legally issued by the United States Patent and Trademark Office on December 14, 2010.  The '017 Patent is directed to new and improved apparatus and methods for methods lighting source ballasts that utilize switching and control technology to

convert an alternating current (AC) phase modulated dimmer input voltage into a drive current to illuminate one or more light emitting diodes (LED(s)).  Plaintiff Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '017 Patent, a copy of which is attached as Exhibit 7.

32.     U.S. Patent Nos. 8,963,449 (the "'449 Patent") and 8,174,204 (the "'204 Patent") are titled "Lighting System with Power Factor Correction Control Data Determined from a Phase Modulated Signal."  The '449 Patent was duly and legally issued by the United States Patent and Trademark Office on February 24, 2015.  The '204 Patent was duly and legally issued by the United States Patent and Trademark Office on May 8, 2012.  The '449 and '204 Patents are directed to new and improved lighting system and method for determining power factor correction control parameters from phase delays in a phase modulated signal.  Plaintiff Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '449 and the '204 Patents   A copy of the '449 and the '204 Patents are attached as Exhibits 8 and 9, respectively.

## FACTUAL BACKGROUND

33.     On information and belief, EGLO is in the business of offering for sale, selling and distributing lighting products including light products based on LED technology.

34.     On information and belief, EGLO offers its infringing products online and in brick and motor locations, using at least Amazon.com, Lumens.com, Wayfair.com, Home Depot Inc., Lowes Inc., Target Corporation, Walmart, Inc., and dealers identified on EGLO's website, to sell and distribute products throughout the United States, including Texas and this District.

35.     On information and belief, Defendant makes, uses, offers to sell, sells, and/or imports the accused products.

36.    On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 203646A, which is a LED wall/ ceiling light.  A datasheet for Material Number 203646A is available at https://datasheet.eglo.com/tds/eng-US/203646A.  An image of Material Number 203646A is provided below.



37.    On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 204483A, which is a LED wall light.  A datasheet for Material Number 204483A is available at https://datasheet.eglo.com/tds/eng-US/204483A.  An image of Material Number 204483A is provided below.



38.   On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 201453A, which is a LED celling/ spot light.  A datasheet for Material Number 201453A is available at https://datasheet.eglo.com/tds/eng-US/201453A.  An image of Material Number 201453A is provided below.



39.   On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 204376A, which is a LED celling/pendant light.  A datasheet for Material Number 204376A is available at https://datasheet.eglo.com/tds/eng-US/204376A.  An image of Material Number 204376A is provided below.



14

40.    On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 203972A, which is a LED celling/ pendant light.  A datasheet for Material Number 203972A is available at https://datasheet.eglo.com/tds/eng-US/203972A.  An image of Material Number 203972A is provided below.



41.    On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 202257A, which is an LED Bulb.  A datasheet for Material Number 203972A is available at https://datasheet.eglo.com/tds/eng-US/202257A.  An image of Material Number 202257A is provided below.



42.     On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 204234A, which is a LED Bulb.  A datasheet for Material Number 204234A is available at https://datasheet.eglo.com/tds/eng-US/204234A.   An image of Material Number 204234A is provided below.



43.     On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 204237A, which is a LED Bulb.  A datasheet for Material Number 204237A is available at https://datasheet.eglo.com/tds/eng-US/204237A.   An image of Material Number 204237A is provided below.



44.     On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 97966A, which is a wall light.  A datasheet for Material Number 97966A is available at https://datasheet.eglo.com/tds/eng-US/97966A.   An image of Material Number 97966A is provided below.



45.     On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 204076A, which is a wall light.  A datasheet for Material Number 204076A is available at https://datasheet.eglo.com/tds/eng-US/204076A.   An image of Material Number 204076A is provided below.



46.     On information and belief, EGLO makes, uses, offers to sell, sells, and/or imports Material Number 201442A, which is a pendant light.  A datasheet for Material Number 201442A is available at https://datasheet.eglo.com/tds/eng-US/201442A.  An image of Material Number 201442A is provided below.



47.     At least as early as Nov. 10, 2021, Defendants received actual notice that certain of its products infringe the '480, '328, and '479 patents.

48.     At least as early as July 20, 2022, Defendants received actual notice that certain of its products infringe the '554, '643, '956, '017, '449, and '204 patents.

49.     After receiving actual notice of its infringement from Signify, Defendants continued their infringing activities despite being aware of Signify's notice of infringement and the risk that it is infringing Signify's patents.  Accordingly, Defendant's ongoing infringement has been and continues to be willful.

**GENERAL ALLEGATIONS**

50.     EGLO has directly and indirectly infringed and continues to directly and indirectly infringe each of the Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using,

selling, offering to sell, and importing into the United States, and inducing and contributing to infringement by others, in this District and elsewhere in the United States, the products identified below.

51.     EGLO's acts of infringement have caused damage to Signify. Signify is entitled to recover from EGLO the damages sustained by Signify as a result of EGLO's wrongful acts in an amount subject to proof at trial.

52.     EGLO's infringement of the Patents-in-Suit has been and continues to be willful. EGLO has been aware of its infringement of Signify's patents since it received notice of infringement, but has continued to sell those products despite being forewarned of its infringement.

53.     EGLO has committed and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and EGLO knew or should have known that its actions constituted an unjustifiably high risk of infringement.

54.     EGLO's infringement of the Patents-in-Suit is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by this Court.  Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the Patents-in-Suit.

55.     In the interest of providing detailed averments of infringement, Signify has identified below at least one claim per patent to demonstrate infringement.  However, the selection of claims and products should not be considered limiting, and additional claims of the Patents-in-Suit that are infringed by EGLO will be disclosed in compliance with the Court's Local Patent Rules.

## COUNT ONE

### (Infringement of U.S. Patent No. 7,182,480)

56. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

57. On information and belief, EGLO has infringed and is infringing claims of the '480 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products including, but not limited to Material Number 203646A (charted below), and/or other products with substantially similar features (collectively, the "'480 Accused Products").

58. Claim 1 of the '480 Patent recites:

1. A system for manipulating illumination created by an array of light emitting devices, said system comprising:

a) a plurality of light emitting devices spatially arranged in an array, said array separated into one or more sections, wherein each section of the array includes light emitting devices capable of creating illumination having a predetermined wavelength range;

b) a macroscopic optical system proximate to the plurality of light emitting devices, said macroscopic optical system enabling redirection of the illumination created by the plurality of light emitting devices, the macroscopic optical system providing a means for creating an off-axis distribution of the illumination; and

c) a microscopic optical system for diffusing the illumination created by the plurality of light emitting devices subsequent to the redirection by the macroscopic optical system, the microscopic optical system configured to retain the off-axis distribution of the illumination; thereby providing a desired level of blending of the predetermined wavelengths ranges.

59. On information and belief, Material Number 203646A includes a system for manipulating illumination created by an array of light emitting devices. For example, this limitation is shown below.



Array of light emitting devices

60.     On information and belief, Material Number 203646A includes a plurality of light emitting devices spatially arranged in an array, said array separated into one or more sections, wherein each section of the array includes light emitting devices capable of creating illumination having a predetermined wavelength range.  For example, this limitation is shown below.



Plurality of light emitting devices spatially arranged in an array, said array separated into one or more sections

61.     On information and belief, Material Number 203646A includes a macroscopic optical system proximate to the plurality of light emitting devices, said macroscopic optical system enabling redirection of the illumination created by the plurality of light emitting devices, the macroscopic optical system providing a means for creating an off-axis distribution of the illumination.  For example, this limitation is shown below

21



Macroscopic optical system proximate to the plurality of light emitting devices

62.    On information and belief, Material Number 203646A includes a microscopic optical system for diffusing the illumination created by the plurality of light emitting devices subsequent to the redirection by the macroscopic optical system, the microscopic optical system configured to retain the off-axis distribution of the illumination; thereby providing a desired level of blending of the predetermined wavelengths ranges.  For example, this limitation is shown below.



Microscopic optical system

Macroscopic optical system

63.    The full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '480 Patent in a similar manner.  Signify makes this preliminary identification of infringing products and infringed claims without the benefit of

discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '480 Patent that is infringed and each product that Signify is aware of that infringes the '480 Patent in accordance with the Local Patent Rules.

64. On information and belief, EGLO has been aware of and has had notice of the '480 Patent and its infringement of the '480 Patent at least as early as November 10, 2021.

65. On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '480 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '480 Patent by active inducement under 35 U.S.C. § 271(b). Defendant has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '480 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '480 Accused Products in the United States. EGLO has performed and continues to perform these affirmative acts with knowledge of the '480 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '480 Patent.

66. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '480 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the

'480 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '480 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '480 Accused Products. The '480 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '480 Patent. EGLO has performed and continues to perform these affirmative acts with knowledge of the '480 Patent and with intent, or willful blindness, that they cause the direct infringement of the '480 Patent.

67.    On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '480 Patent in an amount to be determined at trial.

68.    On information and belief, EGLO's infringement of the '480 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '480 Patent.

69.    On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk. As EGLO has no good faith belief that it does not infringe the '480 Patent, at least EGLO's continued infringement of the '480 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWO

**(Infringement of U.S. Patent No. 7,256,554)**

24

70.     Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

71.     On information and belief, EGLO has infringed and is infringing claims of the '554 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Numbers 204483A (discussed below), 97966A, 204076A, 201442A, 201453A, 204376A, and/or other products with substantially similar features (collectively, the "'554 Accused Products").

72.     Claim 1 of the '554 Patent recites:

> 1.  An apparatus, comprising:
>
> at least one first LED configured to generate first radiation having a first spectrum; and
>
> a first feed-forward driver coupled to the at least one first LED and configured to controllably vary a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first LED and without optically monitoring the first radiation, wherein the first feed-forward driver comprises: at least one energy transfer element to store input energy derived from a power source and to provide output energy to the at least one first LED; and
>
> at least one Switch coupled to the at least one energy transfer element to control at least the input energy stored to the at least one energy transfer element.

73.     On information and belief, each of the '554 Accused Products is an apparatus.

74.     On information and belief, each of the '554 Accused Products includes the at least one first LED configured to generate first radiation having a first spectrum; for example, Material Number 204483A includes the at least one LED light source configured to generate light characterized by radiation in the visible spectrum, as indicated at least by a color temperature value of these products (e.g. 3000K for Material Number 204483A).

25

75.    On information and belief, each '554 Accused Product includes a first feed-forward driver coupled to the at least one first LED.  For example, Material Number 204483A includes a feed-forward driver (e.g., including circuity comprising transformer T1, Diode D1, and transistor Q1) coupled to the at least one LED light source (e.g., through the LED1+/LED- output wire connector).

76.    On information and belief, the first feed-forward driver in each '554 Accused Product is configured to controllably vary a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first LED and without optically monitoring the first radiation.  For example, the feed-forward driver in Material Number 204483A  is configured to variably control the intensity of the light of at least one LED light source based on a varying phase cut AC signal from a phase-cut AC dimmer, without monitoring or regulating the voltage or current provided to the at least one LED light source and without optically monitoring the light generated by the LED light source—the feed-forward driver in Material Number 204483A monitors only signals on the "primary" side of the circuit and is not configured to receive any feedback from the output to the LED light source on the "secondary" side of the circuit.

77.    On information and belief, the first feed-forward driver in each '554 Accused Product includes the at least one energy transfer element to store input energy derived from a power source and to provide output energy to the at least one first LED.  For example, the feed-forward driver in Material Number 204483A includes transformer T1 to store input energy from a power source (e.g., input power from an AC dimmer) and to provide output energy to the at least one LED light source (e.g., through the LED1+/LED- output wire connector).

78.     On information and belief, the first feed-forward driver in each '554 Accused Product includes the at least one switch coupled to the at least one energy transfer element to control the at least the input energy stored to at least one energy transfer element.  For example, the feed-forward driver in Material Number 204483A includes a switch (transistor Q1) coupled to the at least one energy transfer element (transformer T1) and when transistor Q1 is on, current flows through the primary winding of transformer T1 and the transformer T1 stores energy.

79.     The full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '554 Patent in a similar manner.  Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.  Signify will identify each claim of the '554 Patent that is infringed and each product that Signify is aware of that infringes the '554 Patent in accordance with the Local Patent Rules.

80.     On information and belief, EGLO has been aware of and has had notice of the '554 Patent and its infringement of the '554 Patent at least as early as July 20, 2022.

81.     On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '554 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '554 Patent by active inducement under 35 U.S.C. § 271(b).  EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '554 Patent; (2) marketing the infringing

27

capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '554 Accused Products in the United States. EGLO has performed and continues to perform these affirmative acts with knowledge of the '554 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '554 Patent.

82.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '554 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '554 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '554 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '554 Accused Products. The '554 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '554 Patent. EGLO has performed and continues to perform these affirmative acts with knowledge of the '554 Patent and with intent, or willful blindness, that they cause the direct infringement of the '554 Patent.

83.    On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '554 Patent in an amount to be determined at trial.

84.    On information and belief, EGLO's infringement of the '554 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by

28

this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '554 Patent.

85. On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk. As EGLO has no good faith belief that it does not infringe the '554 Patent, at least EGLO's continued infringement of the '554 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT THREE

### (Infringement of U.S. Patent No. 7,737,643)

86. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

87. On information and belief, EGLO has infringed and is infringing claims of the '643 Patent, including at least claim 25, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Numbers 204483A (discussed below), 97966A, 204076A, 201442A, 201453A, 204376A, and/or other products with substantially similar features (collectively, the "'643 Accused Products").

88. Claim 25 of the '643 Patent recites:

25. A method comprising acts of :

A) generating a first radiation having a first spectrum that includes perceivably white light from at least one first white LED; and

B) controllably varying a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first white LED,

wherein the act B) comprises acts of:

storing input energy derived from a power source to at least one energy transfer element;

providing output energy from the at least one energy transfer element to the at least one first white LED; and

controlling at least the input energy stored to the at least one energy transfer element via at least one switch coupled to the at least one energy transfer element, wherein the at least one energy transfer element and the at least one switch form part of an energy transfer arrangement that includes the at least one energy transfer element, the at least one switch, and at least one diode, and wherein the energy transfer arrangement is configured as one of a buck converter, a boost converter, a buck-boost converter, a CUK converter, a flyback converter and a forward converter.

89. On information and belief, each of the '643 Accused Products performs the claimed method comprising the acts.

90. On information and belief, each of the '643 Accused Products generates a first radiation having a first spectrum that includes perceivably white light from at least one first white LED. For example, Material Number 204483A includes at least one first white LED light source configured to generate light characterized by radiation in the visible spectrum, as indicated at least by a color temperature value of these products (e.g. 3000K for the Material Number 204483A).

91. On information and belief, each '643 Accused Product controllably varies a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first white LED. For example, Material Number 204483A includes a feed-forward driver (e.g., including circuity comprising transformer T1, Diode D1, and transistor Q1) coupled to the at least one first white LED light (e.g., through the LED1+/LED- output wire connector). The feed-forward driver is configured to variably control the intensity of the light of the at least one first white LED based on a varying phase cut AC signal from a phase-cut AC dimmer, without monitoring or regulating the voltage or current provided to the at least one first

white LED and without monitoring the light generated by the at least one first white LED —the feed-forward driver in Material Number 204483A monitors only signals on the "primary" side of the circuit and is not configured to receive any feedback from the output to the at least one first white LED on the "secondary" side of the circuit.

92.     On information and belief, each '643 Accused Product controllably varies a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first white LED, wherein each '643 Accused Product stores input energy derived from a power source to at least one energy transfer element and provides output energy from the at least one energy transfer element to the at least one first white LED.  For example, the feed-forward driver in Material Number 204483A includes transformer T1 to store input energy from a power source (e.g., input power from an AC dimmer) and to provide output energy to the at least one LED light source (e.g., through the LED1+/LED- output wire connector).

93.     On information and belief, each '643 Accused Product controllably varies a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first white LED, wherein each '643 Accused Product controls at least the input energy stored to the at least one energy transfer element via at least one switch coupled to the at least one energy transfer element, wherein the at least one energy transfer element and the at least one switch form part of an energy transfer arrangement that includes the at least one energy transfer element, the at least one switch, and at least one diode, and wherein the energy transfer arrangement is configured as one of a buck converter, a boost converter, a buck-boost converter, a CUK converter, a flyback converter and a forward converter.  For example, the feed-forward driver in Material Number 204483A includes a switch (transistor Q1) coupled to the at least one energy transfer element (transformer T1) and when transistor Q1 is on current flows through the

31

primary winding of transformer T1 and the transformer T1 stores energy. Additionally, the feed-forward driver in Material Number 204483A includes a Diode (D1) coupled to the at least one energy transfer element (transformer T1).

94. The full extent of EGLO's infringement is not presently known to Signify. On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe method claim 25 of the '643 Patent in a similar manner.

95. On information and belief, EGLO knowingly induces customers to directly infringe the '643 Patent via its manuals, customer support, and marketing efforts all of which are meant to specifically encourage others to, inter alia, perform the steps of method claim 25 of the '643 Patent. Additionally, through its manufacture, marketing, and sale of products, EGLO specifically intends for customers to perform the method of claim 25 and knows that this method is going to occur.

96. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '643 Patent that is infringed and each product that Signify is aware of that infringes the '643 Patent in accordance with the Local Patent Rules.

97. On information and belief, EGLO has been aware of and has had notice of the '643 Patent and its infringement of the '643 Patent since July 20, 2022.

98. On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '643 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 25 of the '643 Patent by active inducement under 35 U.S.C. § 271(b). EGLO has done so by acts

including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '643 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '643 Accused Products in the United States. EGLO has performed and continues to perform these affirmative acts with knowledge of the '643 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '643 Patent.

99.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '643 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 25 of the '643 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '643 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '643 Accused Products. The '643 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '643 Patent. EGLO has performed and continues to perform these affirmative acts with knowledge of the '643 Patent and with intent, or willful blindness, that they cause the direct infringement of the '643 Patent.

100.    On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '643 Patent in an amount to be determined at trial.

33

101. On information and belief, EGLO's infringement of the '643 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '643 Patent.

102. On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk. As EGLO has no good faith belief that it does not infringe the '643 Patent, at least EGLO's continued infringement of the '643 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FOUR

### (Infringement of U.S. Patent No. 8,070,328)

103. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

104. On information and belief, EGLO has infringed and is infringing claims of the '328 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Number 203972A (charted below) and/or other products with substantially similar features (collectively, the "'328 Accused Products").

105. Claim 1 of the '328 Patent recites:

1. An LED downlight fixture, comprising:

an array of LEDs in thermal connectivity with a heatsink, said array of LEDs positioned adjacent a first aperture of a multi-piece reflector assembly:

said multi-piece reflector assembly including:

34

a first reflector having said first aperture disposed in an upper portion of said first reflector and an opposed larger second aperture in a lower portion of said first reflector;

a second reflector having a first aperture positioned adjacent said second aperture of said first reflector and a second aperture opposite said first aperture of said second reflector and defining a light exit passageway;

a diffuser positioned proximal to and extending across said second aperture of said first reflector and said first aperture of said second reflector.

106.    On information and belief, Material Number 203972A is an LED downlight Fixture.  For example, this limitation is shown below.



107.    On information and belief, the Material Number 203972A comprises an array of LEDs in thermal connectivity with a heatsink, said array of LEDs positioned adjacent a first aperture of a multi-piece reflector assembly.  For example, this limitation is shown below.





108.    On information and belief, Material Number 203972A comprises a multi-piece reflector assembly including a first reflector having said first aperture disposed in an upper portion of said first reflector and an opposed larger second aperture in a lower portion of said first reflector. For example, this limitation is shown below.

36



109.    On information and belief, Material Number 203972A comprises a multi-piece reflector assembly including a second reflector having a first aperture positioned adjacent said second aperture of said first reflector and a second aperture opposite said first aperture of said second reflector and defining a light exit passageway.  For example, this limitation is shown below.



110.    On information and belief, Material Number 203972A comprises a diffuser positioned proximal to and extending across said second aperture of said first reflector and said first aperture of said second reflector.  For example, this limitation is shown below.



111.    The full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '328 Patent in a similar manner.  Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.  Signify will identify each claim of the '328 Patent that is infringed and each product that Signify is aware of that infringes the '328 Patent in accordance with the Local Patent Rules.

112.    On information and belief, EGLO has been aware of and has had notice of the '328 Patent and its infringement of the '328 Patent since at least November 10, 2021.

113.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '328 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '328 Patent by active inducement under 35 U.S.C. § 271(b).  EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe,

either literally or under the doctrine of equivalents, the '328 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '328 Accused Products in the United States. EGLO has performed and continues to perform these affirmative acts with knowledge of the '328 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '328 Patent.

114. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '328 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '328 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '328 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '328 Accused Products. The '328 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '328 Patent. EGLO has performed and continues to perform these affirmative acts with knowledge of the '328 Patent and with intent, or willful blindness, that they cause the direct infringement of the '328 Patent.

115. On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '328 Patent in an amount to be determined at trial.

116. On information and belief, EGLO's infringement of the '328 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by

39

this Court.  Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '328 Patent.

117.    On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk.  As EGLO has no good faith belief that it does not infringe the '328 Patent, at least EGLO's continued infringement of the '328 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT FIVE

### (Infringement of U.S. Patent No. 8,348,479)

118.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

119.    On information and belief, EGLO has infringed and is infringing claims of the '479 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Number 203972A (charted below) and/or other products with substantially similar features (collectively, the "'479 Accused Products").

120.    Claim 1 of the '479 Patent recites:

1. A downlight module, comprising:

a light emitting diode ("LED") package comprising a plurality of LEDs mounted to a common substrate;

a heat sink coupled to the LED package; and

at least two torsion springs located on opposite side surfaces of the downlight module proximal to an open end of the downlight module, wherein the torsion springs are used to mount the heat sink and LED package within a recessed light fixture,

40

wherein the LED package generates substantially all of the light emitted by the recessed lighting fixture through the open end of the downlight module.

121.   On information and belief, Material Number 203972A is a downlight module.  For example, this limitation is shown below.



122.   On information and belief, Material Number 203972A comprises a light emitting diode ("LED") package comprising a plurality of LEDs mounted to a common substrate.  For example, this limitation is shown below.



123.   On information and belief, Material Number 203972A comprises a heat sink coupled to the LED package.  For example, this limitation is shown below.



124.    On information and belief, Material Number 203972A comprises at least two torsion springs located on opposite side surfaces of the downlight module proximal to an open end of the downlight module, wherein the torsion springs are used to mount the heat sink and LED package within a recessed light fixture.  For example, this limitation is shown below.



125.    On information and belief, Material Number 203972A comprises a recessed light fixture wherein the LED package generates substantially all of the light emitted by the recessed lighting fixture through the open end of the downlight module.  For example, this limitation is shown below.



126.    The full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '479 Patent in a similar manner.  Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.  Signify will identify each claim of the '479 Patent that is infringed and each product that Signify is aware of that infringes the '479 Patent in accordance with the Local Patent Rules.

127.    On information and belief, EGLO has been aware of and has had notice of the '479 Patent and its infringement of the '479 Patent since at least November 10, 2021.

128.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '479 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '479 Patent by active inducement under 35 U.S.C. § 271(b).  EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '479 Patent; (2) marketing the infringing

capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '479 Accused Products in the United States. EGLO has performed and continues to perform these affirmative acts with knowledge of the '479 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '479 Patent.

129. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '479 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '479 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '479 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '479 Accused Products. The '479 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '479 Patent. EGLO has performed and continues to perform these affirmative acts with knowledge of the '479 Patent and with intent, or willful blindness, that they cause the direct infringement of the '479 Patent.

130. On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '479 Patent in an amount to be determined at trial.

131. On information and belief, EGLO's infringement of the '479 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by

44

this Court.  Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '479 Patent.

132.    On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk.  As EGLO has no good faith belief that it does not infringe the '479 Patent, at least EGLO's continued infringement of the '479 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT SIX**

**(Infringement of U.S. Patent No. 7,543,956)**

133.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

134.    On information and belief, EGLO has infringed and is infringing claims of the '956 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Numbers 202257A, 204234A (charted below), 204237A, and/or other products with substantially similar features (collectively, the "'956 Accused Products").

135.    Claim 1 of the '956 Patent recites:

> 1. A system, comprising:
>
> a plurality of embedded units, each embedded unit comprising at least one LED-based light source;
>
> at least two conductive elements conductively connected to the plurality of embedded units;
>
> a matrix of surface material surrounding the plurality of embedded units and the conductive elements such that the plurality of

45

embedded units are embedded within the surface material; the matrix comprising

>a first module serving as a frame for supporting the plurality of embedded units and the conductive elements in a fixed position during fabrication of the matrix and having features thereon for supporting the plurality of embedded units and the conductive elements; and

>a second module bonded to the first module and configured to surround the plurality of embedded units and the conductive elements; and

>at least one connection mechanism configured to couple to the conductive elements at least one of power and at least one control signal for the plurality of embedded units.

136.    On information and belief, Material Number 204234A is a system comprising a plurality of embedded units, each embedded unit comprising at least one LED-based light source. For example, this limitation is shown below.



Plurality of embedded units, each embedded unit comprising at least one LED light source

137.    On information and belief, Material Number 204234A includes at least two conductive elements conductively connected to the plurality of embedded units.  For example, this limitation is shown below.



Conductive elements

138.    On information and belief, Material Number 204234A includes a matrix of surface material surrounding the plurality of embedded units and the conductive elements such that the plurality of embedded units are embedded within the surface material.  For example, this limitation is shown below.



Matrix of surface material

139.     On information and belief, Material Number 204234A includes a matrix with a first module serving as a frame for supporting the plurality of embedded units and the conductive elements in a fixed position during fabrication of the matrix and having features thereon for supporting the plurality of embedded units and the conductive elements.  For example, at least a portion of the yellow matrix, shown in the picture below, contains a first module serving as a frame for supporting the plurality of embedded units and the conductive elements in a fixed position during fabrication of the matrix, and has features thereon for supporting the plurality of embedded units and the conductive elements.

Matrix, with a portion containing a first module



140.     On information and belief, Material Number 204234A includes a matrix with a second module bonded to the first module and configured to surround the plurality of embedded

units and the conductive elements.   For example, at least a portion of the yellow matrix, shown in the picture below, contains a second module bonded to the first module, configured to surround the plurality of embedded units and the conductive elements.



142.    On information and belief, Material Number 204234A includes a matrix with at least one connection mechanism configured to couple to the conductive elements at least one of power and at least one control signal for the plurality of embedded units.   For example, this limitation is shown below.



142.    The full extent of EGLO's infringement is not presently known to Signify. On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '956 Patent in a similar manner.   Signify makes this

preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.  Signify will identify each claim of the '956 Patent that is infringed and each product that Signify is aware of that infringes the '956 Patent in accordance with the Local Patent Rules.

143.    On information and belief, EGLO has been aware of and has had notice of the '956 Patent and its infringement of the '956 Patent since at least July 20, 2022.

144.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '956 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '956 Patent by active inducement under 35 U.S.C. § 271(b).  EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '956 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products.  Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '956 Accused Products in the United States.  EGLO has performed and continues to perform these affirmative acts with knowledge of the '956 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '956 Patent.

145.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '956 Accused Products on or after EGLO first had notice of Signify's allegations of

50

infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '956 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '956 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '956 Accused Products. The '956 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '956 Patent. EGLO has performed and continues to perform these affirmative acts with knowledge of the '956 Patent and with intent, or willful blindness, that they cause the direct infringement of the '956 Patent.

146. On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '956 Patent in an amount to be determined at trial.

147. On information and belief, EGLO's infringement of the '956 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '956 Patent.

148. On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk. As EGLO has no good faith belief that it does not infringe the '956 Patent, at least EGLO's continued infringement of the '956 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT SEVEN**

**(Infringement of U.S. Patent No. 7,852,017)**

149.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

150.    On information and belief, EGLO has infringed and is infringing claims of the '017 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Numbers 204483A (discussed below), 97966A, 204076A, 201442A, and/or other products with substantially similar features (collectively, the "'017 Accused Products").

151.    Claim 1 of the '017 Patent recites:

1. A lighting system ballast comprising:

a light source driver stage configured to deliver power to one or more light emitting diodes with an adjustable drive current;

a sensor having one or more input terminals to receive a phase modulated dimmer signal, wherein a phase delay of the phase modulated dimmer signal indicates a dimming level and the sensor is configured to detect the dimming level and to generate a dimmer output signal representing a dimming level indicated by the dimmer signal; and

a controller coupled to the light source driver stage and the sensor, wherein the controller includes at least one input terminal to receive the dimmer output signal from the sensor and to generate a drive control signal to cause a drive current supplied to each light emitting diode to dim each light emitting diode in response to the dimmer signal, wherein the drive current is approximately constant for each dimming level throughout a cycle of the phase modulated dimmer signal.

152.    On information and belief each of the '017 Accused Products includes a lighting system ballast.

153.    On information and belief, each of the '017 Accused Products include a light source driver stage configured to deliver power to one or more light emitting diodes with an adjustable drive current.  For example, Material Number 204483A includes a light source driver stage (e.g., including circuity comprising transformer T1, Diode D1, and transistor Q1) configured to deliver power to one or more light emitting diodes with an adjustable drive current (e.g., through the LED1+/LED- output wire connector).

154.    On information and belief, each '017 Accused Product includes a sensor having one or more input terminals to receive a phase modulated dimmer signal, wherein a phase delay of the phase modulated dimmer signal indicates a dimming level and the sensor is configured to detect the dimming level and to generate a dimmer output signal representing a dimming level indicated by the dimmer signal.  For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC off-line power supply controller for dimmable LEDs.  The Renesas iW3688 comprises a sensor having one or more input terminals to receive a phase modulated dimmer signal, wherein a phase delay of the phase modulated dimmer signal indicates a dimming level and the sensor is configured to detect the dimming level and to generate a dimmer output signal representing a dimming level indicated by the dimmer signal.

155.    On information and belief, each '017 Accused Product includes a controller coupled to the light source driver stage and the sensor, wherein the controller includes at least one input terminal to receive the dimmer output signal from the sensor and to generate a drive control signal to cause a drive current supplied to each light emitting diode to dim each light emitting diode in response to the dimmer signal, wherein the drive current is approximately constant for each dimming level throughout a cycle of the phase modulated dimmer signal.  For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC

off-line power supply controller for dimmable LEDs.  The Renesas iW3688 comprises a controller coupled to the light source driver stage and the sensor, wherein the controller includes at least one input terminal to receive the dimmer output signal from the sensor and to generate a drive control signal to cause a drive current supplied to each light emitting diode to dim each light emitting diode in response to the dimmer signal, wherein the drive current is approximately constant for each dimming level throughout a cycle of the phase modulated dimmer signal.

156.    On information and belief, the full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '017 Patent in a similar manner.  Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.  Signify will identify each claim of the '017 Patent that is infringed and each product that Signify is aware of that infringes the '017 Patent in accordance with the Local Patent Rules.

157.    On information and belief, EGLO has been aware of and has had notice of the '017 Patent and its infringement of the '017 Patent since at least July 20, 2022.

158.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '017 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '017 Patent by active inducement under 35 U.S.C. § 271(b).  EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '017 Patent; (2) marketing the infringing

54

capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products.  Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '017 Accused Products in the United States.  EGLO has performed and continues to perform these affirmative acts with knowledge of the '017 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '017 Patent.

159.     On information and belief, by continuing make, use, sell, offer to sell, and/or import the '017 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '017 Patent by contributorily infringing under 35 U.S.C. § 271(c).  EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '017 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '017 Accused Products.  The '017 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '017 Patent.  EGLO has performed and continues to perform these affirmative acts with knowledge of the '017 Patent and with intent, or willful blindness, that they cause the direct infringement of the '017 Patent.

160.     On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '017 Patent in an amount to be determined at trial.

161.     On information and belief, EGLO's infringement of the '017 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by

this Court.  Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '017 Patent.

162.    On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk.  As EGLO has no good faith belief that it does not infringe the '017 Patent, at least EGLO's continued infringement of the '017 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT EIGHT**

**(Infringement of U.S. Patent No. 8,963,449)**

163.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

164.    On information and belief, EGLO has infringed and is infringing claims of the '449 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Numbers 204483A (discussed below), 97966A, 204076A, 201442A, and/or other products with substantially similar features (collectively, the "'449 Accused Products").

165.    Claim 1 of the '449 Patent recites:

1. A light emitting diode (LED) lighting system comprising:

a controller comprising;

> an input to receive a phase delay signal indicating a phase delay of a phase modulated dimmer signal; and

> a signal processor, coupled to the input, to receive the phase delay signal and determine a control operating parameter from the phase delay signal and to generate a switch control signal using the determined operating parameter to vary an

56

input current to a switching power converter with a phase modulated voltage.

.

166.    On information and belief, Material Number 204483A is an LED lighting system.

167.    On information and belief, each of the '449 Accused Products includes a controller. For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC off-line power supply controller that includes a controller.

168.    On information and belief, each '449 Accused Product includes a controller with an input to receive a phase delay signal indicating a phase delay of a phase modulated dimmer signal.  For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC off-line power supply controller for dimmable LED's that includes a controller with an input that receives a phase delay signal indicating a phase delay of a phase modulated dimmer signal.

169.    On information and belief, the each '449 Accused Product includes a controller with a signal processor, coupled to the input, to receive the phase delay signal and determine a control operating parameter from the phase delay signal and to generate a switch control signal using the determined operating parameter to vary an input current to a switching power converter with a phase modulated voltage.  For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC off-line power supply controller for dimmable LED's that includes a controller that includes a signal processor, coupled to an input, that receives a phase delay signal, and determines a control operating parameter from the phase delay signal, and generates  a switch control signal using the determined operating parameter to vary an input current to a switching power converter with a phase modulated voltage.

170.    On information and belief, the full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '449 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.  Signify will identify each claim of the '449 Patent that is infringed and each product that Signify is aware of that infringes the '449 Patent in accordance with the Local Patent Rules.

171.    On information and belief, EGLO has been aware of and has had notice of the '449 Patent and its infringement of the '449 Patent since at least July 20, 2022.

172.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '449 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '449 Patent by active inducement under 35 U.S.C. § 271(b).  EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '449 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products.  Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '449 Accused Products in the United States.  EGLO has performed and continues to perform these affirmative acts with

knowledge of the '449 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '449 Patent.

173.    On information and belief, by continuing make, use, sell, offer to sell, and/or import the '449 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '449 Patent by contributorily infringing under 35 U.S.C. § 271(c).  EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '449 Accused Products, in this District and elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '449 Accused Products.  The '449 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '449 Patent.  EGLO has performed and continues to perform these affirmative acts with knowledge of the '449 Patent and with intent, or willful blindness, that they cause the direct infringement of the '449 Patent.

174.    On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '449 Patent in an amount to be determined at trial.

175.    On information and belief, EGLO's infringement of the '449 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by this Court.  Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '449 Patent.

176.    On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk.  As EGLO has no good faith belief that it does not infringe the '449 Patent, at least EGLO's continued infringement of the '449 Patent is willful and deliberate,

59

entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT NINE

### (Infringement of U.S. Patent No. 8,174,204)

177. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

178. On information and belief, EGLO has infringed and is infringing claims of the '204 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to Material Numbers 204483A (discussed below), 97966A, 204076A, 201442A, and/or other products with substantially similar features (collectively, the "'204 Accused Products").

179. Claim 1 of the '204 Patent recites:

> 1. A light emitting diode (LED) lighting system comprising:
>
> a power factor correction (PFC) controller comprising;
>
> > an input to receive a phase delay signal indicating a phase delay of a phase modulated dimmer signal; and
> >
> > a digital signal processor, coupled to the input, to receive the phase delay signal and determine a PFC control operating parameter from the phase delay signal and to generate a PFC switch control signal using the determined operating parameter.

.

180. On information and belief, Material Number 204483A is an LED lighting system.

181. On information and belief, each '204 Accused Product includes a power factor correction (PFC) controller.  For example, Material Number 204483A includes a Renesas iW3688

single stage, high performance AC/DC off-line power supply controller that includes a power factor correction (PFC) controller.

182.    On information and belief, each '204 Accused Product includes a controller with an input to receive a phase delay signal indicating a phase delay of a phase modulated dimmer signal.  For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC off-line power supply controller for dimmable LED's that includes a controller with an input that receives a phase delay signal indicating a phase delay of a phase modulated dimmer signal.

183.    On information and belief, the each '204 Accused Product includes a controller with a digital signal processor, coupled to the input, to receive the phase delay signal and determine a PFC control operating parameter from the phase delay signal and to generate a PFC switch control signal using the determined operating parameter.  For example, Material Number 204483A includes a Renesas iW3688 single stage, high performance AC/DC off-line power supply controller for dimmable LED's that includes a controller with a digital signal processor, coupled to an input, to receive a phase delay signal and determine a PFC control operating parameter from a phase delay signal and to generate a PFC switch control signal using the determined operating parameter.

184.    On information and belief, the full extent of EGLO's infringement is not presently known to Signify.  On information and belief, EGLO has made and sold, or will make and sell, products under different names or part numbers that infringe the '204 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained

through discovery or otherwise. Signify will identify each claim of the '204 Patent that is infringed and each product that Signify is aware of that infringes the '204 Patent in accordance with the Local Patent Rules.

185.    On information and belief, EGLO has been aware of and has had notice of the '204 Patent and its infringement of the '204 Patent since at least July 20, 2022.

186.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '204 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '204 Patent by active inducement under 35 U.S.C. § 271(b). EGLO has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '204 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Such conduct by EGLO was intended to and results in direct infringement by EGLO's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '204 Accused Products in the United States. EGLO has performed and continues to perform these affirmative acts with knowledge of the '204 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '204 Patent.

187.    On information and belief, by continuing make, use, sell, offer to sell, and/or import the '4 Accused Products on or after EGLO first had notice of Signify's allegations of infringement, EGLO indirectly infringes and continues to indirectly infringe at least claim 1 of the '204 Patent by contributorily infringing under 35 U.S.C. § 271(c). EGLO's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '204 Accused Products, in this District and

elsewhere in the United States, contribute to EGLO's customers and end-users directly infringing of the '204 Accused Products.  The '204 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by EGLO to be especially made or especially adapted for use in infringement of the '204 Patent.  EGLO has performed and continues to perform these affirmative acts with knowledge of the '204 Patent and with intent, or willful blindness, that they cause the direct infringement of the '204 Patent.

188.    On information and belief, Signify has suffered and continues to suffer damages as a result of EGLO's infringement of the '204 Patent in an amount to be determined at trial.

189.    On information and belief, EGLO's infringement of the '204 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless EGLO is enjoined by this Court.  Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '204 Patent.

190.    On information and belief, EGLO has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and EGLO's subjective knowledge of this obvious risk.  As EGLO has no good faith belief that it does not infringe the '204 Patent, at least EGLO's continued infringement of the '204 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

191.    Signify hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Signify prays for the following judgments and relief:

(a)    A judgment that EGLO has infringed and are infringing the Patents-in-Suit;

(b)    A permanent injunction against EGLO and its affiliates, subsidiaries, assignees, employees, agents or anyone acting in privity or concert from infringing the Patents-in-Suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Patents-in-Suit; using or performing methods claimed in any of the claims of the Patents-in-Suit; inducing others to use and perform methods that infringe any claim of the Patents-in-Suit; or contributing to others using and performing methods that infringe any claim of the Patents-in-Suit, until the expiration of the Patents-in-Suit;

(c)    A judgment that EGLO's infringement of the Patents-in-Suit was willful and that Defendant's continued infringement of the Patents-in-Suit is willful;

(d)    An award of damages adequate to compensate Signify for EGLO's patent infringement, and an accounting to adequately compensate Signify for the infringement, including, but not limited to, lost profits and/or a reasonable royalty;

(e)    An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

(f)    An award of damages for willful infringement;

(g)    An order finding that this is an exceptional case and awarding Signify its costs, expenses, disbursements, and reasonable attorneys' fees related to EGLO's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

(h)    Such other further relief, in law or equity, as this Court deems just and proper.

Dated: July 25, 2022                              Respectfully submitted,

64

*/s/ Brady Cox*

Brady Cox (TX 24074084)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Phone: 214-922-3443
Fax: 214-922-3843
Email: brady.cox@alston.com

Adam D. Swain (*pro hac vice* forthcoming)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004-1404
Phone: (202) 239-3300
Fax: (202) 239-3333
Email: adam.swain@alston.com

Theodore Stevenson, III (TX Bar No. 19196650)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas TX 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
Email: ted.stevenson@alston.com

Philip Ducker (*pro hac vice* forthcoming)
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105-0912
Phone: 415-243-1059
Fax: 415-243-1001
Email: phil.ducker@alston.com

Joshua D. Rice (*pro hac vice* forthcoming)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Phone: 404-881-7430
Fax: 404-881-7777
Email: josh.rice@alston.com

***Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.***

65